UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUSTOLIA RAMIREZ, | Case No. EDCV 10-1657 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## I. SUMMARY

On November 5, 2010, plaintiff Eustolia Ramirez ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Nov. 9, 2010 Case Management Order, ¶ 5.
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 25, 2008, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 13, 142, 150). Plaintiff asserted that she became disabled on December 31, 1987, due to anxiety, lupus, head surgeries, aneurism and pain behind her eyes. (AR 160). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel and assisted by a Spanish language interpreter) on May 19, 2010. (AR 26-43).

On July 2, 2010, the ALJ determined that plaintiff was not disabled through the date of the decision.[2] (AR 13-14, 25). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: cognitive disorder and mood disorder (AR 17); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 18-20); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but is limited to unskilled, entry-level work with Specific Vocational Preparation ("SVP") rating of 2 or less (AR 20); (4) plaintiff had no past relevant work (AR 23); (5) there are jobs that exist in

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] With respect to plaintiff's application for Disability Insurance Benefits, the ALJ determined that plaintiff was not disabled prior to December 31, 1991, the date last insured. (AR 14, 25).

2

significant numbers in the national economy that plaintiff could perform (AR 24); and (6) plaintiff's allegations regarding her limitations were less than fully credible. (AR 21).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///

|   |     |                                                                    |
|---|-----|--------------------------------------------------------------------|
| 1 | (4) | Does the claimant possess the residual functional capacity to      |
| 2 |     | perform claimant's past relevant work? If so, the claimant is      |
| 3 |     | not disabled. If not, proceed to step five.                        |
| 4 | (5) | Does the claimant's residual functional capacity, when             |
| 5 |     | considered with the claimant's age, education, and work            |
| 6 |     | experience, allow claimant to adjust to other work that exists in  |
| 7 |     | significant numbers in the national economy? If so, the            |
| 8 |     | claimant is not disabled. If not, the claimant is disabled.        |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Adam Cash, a state-agency examining psychologist, expressed in the report of a Psychological Evaluation dated October 30, 2008.[3] (Plaintiff's Motion at 6-12) (citing Exhibit B6F [AR 399-402]). The Court disagrees.

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more

---

[3] In the October 30, 2008 Psychological Evaluation report, Dr. Cash diagnosed plaintiff with Depressive Disorder, NOS (not otherwise specified) and Cognitive Disorder NOS, and indicated that plaintiff (i) had cognitive deficits and a mood disorder; (ii) had moderate impairment in her ability to understand, remember and carry out simple instructions; (iii) had marked impairment in concentration, persistence, and pace; (iv) had mild impairment in her ability to function in the workplace; (v) had marked impairment in her tolerance for stress "at this time"; and (vi) was at mild risk for emotional deterioration in the workplace. (AR 402). Dr. Cash based his opinions on the results of the following psychological tests: Complete Psychological Evaluation, Mental Status Examination, Bender Gestalt II, Rey 15 II, Memory for Designs, Trail Making Test Parts A and B, and Test of Nonverbal Intelligence – 3rd Edition (TONI-3). (AR 400-02).

5

weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the

---

[4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

6

[physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). These standards also apply to opinions of examining physicians. See Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31); Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

## 2. Analysis

First, the ALJ properly rejected the mental limitations stated in Dr. Cash's Psychological Evaluation because they were unsupported by clinical findings and the record as a whole. See Mendoza v. Astrue, 371 Fed. Appx. 829, 831–32 (9th Cir. 2010)[5] ("The ALJ permissibly rejected a medical opinion of a non-treating examining physician that was unsupported by the record as a whole.") (citing Batson, 359 F.3d at 1195); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining physician if the opinion is unsupported by clinical findings). Both the ALJ and Dr. D. Williams, a state-agency reviewing psychiatrist, noted that the clinical findings upon which Dr. Cash based his opinions were, in part, flawed. (AR 23). For example, plaintiff's scores from the Trail Making Test Dr. Cash administered would have been "artificially low[]" since "trails scores" require "some familiarity with numbers and the alphabet to be done quickly," yet plaintiff has only a sixth grade education. (AR 23, 420). The ALJ and Dr. Williams also found Dr. Cash's opinions less valuable because they were based on "a one-time, limited psychological evaluation."[6] (AR 23, 420). Dr. Williams specifically observed that

---

[5] Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36–3(b); Fed. R. App. P. 32.1(a).

[6] Dr. Cash himself characterized his evaluation of plaintiff as "a one-time, limited psychological evaluation and testing session." (AR 402).

7

data obtained from a "moment in time hold less validity if other data conflict with the one time assessment." (AR 420). Here, for example, Dr. Williams noted that Dr. Cash's psychological testing showed plaintiff with "psychomotor slowing," yet plaintiff's treating physician found plaintiff to be "very conversant." (AR 420) (citing AR 365, 400). Dr. Cash also found that plaintiff had "impaired memory," yet the report of a Complete Internal Medicine Evaluation by a different physician indicated that upon examination plaintiff was an "adequate . . . and reliable historian."[7] (AR 420) (citing AR 393). Moreover, the ALJ also noted that (i) the medical record contains no evidence that "[plaintiff] received [] acute mental health treatment for any alleged impairment"; (ii) there is no medical opinion in the record which suggested any functional limitations more restrictive than the ALJ's residual functional capacity assessment for plaintiff; and (iii) there is no medical opinion from a treating source which assessed any mental limitations. (AR 22-23) (citing Exhibits B1F-B17F [AR 212-480]).

      Moreover, the ALJ properly rejected Dr. Cash's opinions in favor of the conflicting opinions of Dr. Williams and Dr. Amado (another state-agency reviewing psychiatrist), which were consistent with the ALJ's assessment that plaintiff had the residual functional capacity to do unskilled work at all exertional levels. (AR 419-20, 443-44). The opinions of the state agency psychiatrists constitute substantial evidence supporting the ALJ's decision since, as the ALJ noted (AR 23), they were consistent with all other evidence in the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be

---

[7]The Court also notes that Dr. Cash himself stated that plaintiff "appeared to be a reliable historian." (AR 400).

8

discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"). Any conflict in the properly supported medical opinion evidence is the sole province of the ALJ to resolve. Andrews, 53 F.3d at 1041.

Accordingly, a remand or reversal is not warranted on this basis.

**B. The ALJ's Findings at Step Five of the Sequential Evaluation Process Are Free of Material Error**

**1. Pertinent Law**

At step five of the sequential evaluation process, the Commissioner has the burden to demonstrate that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Tackett, 180 F.3d at 1100-01 (citations omitted).

When a claimant suffers only exertional (strength-related) limitations, the ALJ must consult the Grids. Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir.), as amended (2006). When a claimant suffers only non-exertional limitations, the Grids (which are predicated solely on a claimant's exertional limitations) are generally inappropriate and the ALJ must rely on other evidence.[8]

---

[8]An ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to the make the Grids inapplicable to the particular case. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two. Id.

9

Id. When a claimant suffers from both exertional and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of disability with respect to exertional limitations. See Lounsburry, 468 F.3d at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). If so, the claimant must be awarded benefits. Cooper, 880 F.2d at 1155. If not, and if the claimant suffers from significant and sufficiently severe non-exertional limitations, not accounted for in the Grids, the ALJ must take the testimony of a vocational expert. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

**2. Analysis**

Plaintiff contends that the ALJ erred at Step Five by (1) failing properly to consider plaintiff's alleged inability to communicate in English; (2) finding that plaintiff could perform jobs that are inconsistent with plaintiff's alleged inability to communicate in English; and (3) not obtaining and considering testimony from a vocational expert. The Court disagrees.

**a. Ability to Communicate in English**

Substantial evidence supported the ALJ's determination that plaintiff was able to communicate in English. As the ALJ noted, at the administrative hearing plaintiff responded to the ALJ's preliminary questioning in English and without assistance from the Spanish interpreter; Plaintiff also testified that she was able to speak and understand English "a little bit," and that she had been in the United States for almost 40 years. (AR 23) (citing AR 29). While plaintiff contends that the record contains evidence that plaintiff cannot communicate in English, the Court will not second guess the ALJ's reasonable interpretation that plaintiff can, even if such evidence could give rise to inferences more favorable to plaintiff. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (not court's role to second-guess ALJ's reasonable interpretation of the evidence) (citation omitted). Even assuming the ALJ's finding regarding plaintiff's English language skills was erroneous, any such error was harmless. As discussed below, since plaintiff was

limited to unskilled work, but otherwise retained the ability to perform a full range of work at all exertional levels, evidence that plaintiff also lacked the ability to communicate in English would not have changed the ALJ's ultimate nondisability determination. See Stout, 454 F.3d at 1055 (An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.").

### b. Job Conflicts With Plaintiff's Abilities

The ALJ did not err at step five by failing to address inconsistencies between plaintiff's abilities and the requirements of any particular job. An ALJ is not required to address inconsistencies between the Dictionary of Occupational Titles ("DOT")[9] requirements for particular jobs identified by the ALJ and a claimant's abilities unless the ALJ relied on the testimony of a vocational expert at Step Five. See Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p);[10] see also Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation.") (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). Therefore, since the ALJ found plaintiff not disabled without relying on testimony from a vocational expert (*i.e.*, by applying the Grids), the ALJ was not required to identify any individual representative jobs – much less explain any inconsistencies between such jobs and plaintiff's abilities – in order to satisfy the Commissioner's burden of proof at Step Five. See Tackett, 180 F.3d at 1101 ("The [Grids] present, in *table form*, a short-hand method for determining the availability and numbers of

---

[9]ALJs routinely rely on the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted).

[10]Social Security rulings are binding on the Administration. See Terry, 903 F.2d at 1275. Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi, 486 F.3d at 1152 n.6.

suitable jobs for a claimant.") (emphasis in original); cf. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) ("[The Grids] relieve the [Commissioner] of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy."). To the extent the ALJ erred by identifying individual representative jobs (AR 24), any such error was harmless since, as discussed below, the ALJ properly determined disability by reference to the Grids rather than testimony from a vocational expert.

### c. Vocational Expert

Contrary to plaintiff's contention, the ALJ was not required to obtain testimony from a vocational expert to satisfy the Commissioner's burden of proof at Step Five.

First, "[i]f the grids accurately and completely describe a claimant's particular impairments, an ALJ may apply the grids instead of taking testimony from a vocational expert." Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1988)). Thus, even where, like here, a claimant's limitations are entirely non-exertional, a vocational expert's testimony is not required unless the ALJ determines that such non-exertional limitations are "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." Hoopai, 499 F.3d at 1076 (citation omitted); see Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 577 (9th Cir. 1988) ("A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable."). It is within the ALJ's province to determine whether a claimant's non-exertional limitations are sufficiently severe to obviate the need for testimony from a vocational expert. Sam v. Astrue, 2010 WL 4967718, at *11 (E.D. Cal. Dec. 1, 2010) (citing Desrosiers, 846 F.2d at 577).

///

Second, here, substantial evidence supports the ALJ's finding that plaintiff's non-exertional limitations "[had] little or no effect" on plaintiff's ability to do "unskilled work at all exertional levels."[11] (AR 24). As the ALJ noted, the medical record lacks persuasive evidence of any functional limitation more restrictive than the ALJ's residual functional capacity assessment which limited plaintiff to unskilled work at all exertional levels. (AR 22-23) (citing Exhibits B1F-B17F [AR 212-480]). To the extent Dr. Cash assessed plaintiff with more restrictive mental limitations, as discussed above the ALJ properly rejected such opinions for specific and legitimate reasons supported by substantial evidence. As the ALJ also noted, both state-agency reviewing psychiatrists opined that the medical evidence supported a finding that plaintiff could do jobs involving unskilled work at all exertional levels. (AR 22-23, 419-20, 443-44). Moreover, plaintiff does not challenge the ALJ's assessment that plaintiff's allegations regarding subjective symptoms (*i.e.*, poor memory, depression and inability to concentrate) were not credible.

Finally, where a claimant is limited to unskilled work, but otherwise retains the ability to perform a full range of work at all exertional levels, the Grids accurately and completely describe the plaintiff's particular impairments. See Sam, 2010 WL 4967718, at *11 ("An individual with solely non-exertional limitations who is capable of performing the full range of unskilled work is capable of performing jobs that exist in significant numbers [in the national economy].") (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 203.00(a)). Therefore, here, the ALJ properly relied on Section 204.00 to find plaintiff not disabled. See, e.g., Hoopai, 499 F.3d at 1076-77 (holding that ALJ properly relied on the Grids where substantial evidence supported the ALJ's conclusion that the claimant's

---

[11]Plaintiff does not challenge the ALJ's assessment that she has the residual functional capacity to perform the full range of work at all <u>exertional</u> levels.

13

depression was not sufficiently severe to limit the range of work claimant could do); Sam, 2010 WL 4967718, at *10-*11 (ALJ's reliance on Section 204.00 to find plaintiff not disabled was proper where ALJ determined that plaintiff's limitation to jobs involving simple, repetitive tasks (*i.e.*, "unskilled work") had little or no effect on plaintiff's ability otherwise to perform a full range of work at all exertional levels.); cf. Hansen v. Astrue, 2008 WL 2705594, at *3-*5 (W.D. Wash July 7, 2008) (ALJ was not required at step five to consult a vocational expert where claimant had no exertional limitations, and substantial evidence supported ALJ's finding that claimant's nonexertional impairments which limited claimant to simple, repetitive tasks (*i.e.*, "reading disorder, disorder of written expression, and adjustment disorder with mixed anxiety and depressed mood") "were not sufficiently severe such that they significantly affect[ed] [claimant's] ability to work.").

Even assuming, for the sake of argument, that plaintiff was effectively illiterate for Social Security disability purposes (*i.e.*, unable to communicate in English),[12] such non-exertional impairment does not preclude use of the Grids in this case. Where, like here, a plaintiff otherwise retains the ability to do "unskilled work at all exertional levels," limitations related to illiteracy are already accounted for in the Grids. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00(i), 202.00(g) (illiteracy or inability to communicate in English may limit an individual's vocational scope, but is least significant in considering the ability to perform the work functions of unskilled work); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00 ("[A]n impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, <u>even though age, education, and skill level</u>

---

[12]See Pinto, 249 F.3d at 846 n.4 (Under Social Security rules "[i]lliteracy is subsumed under inability to communicate in English.") (citations omitted).

of prior work experience may be considered adverse.") (emphasis added); <u>Sorter v. Astrue</u>, 389 Fed. Appx. 620, 622-23 (9th Cir. 2010) (ALJ properly found that claimant's "non-exertional limitations [of] . . . illiteracy and borderline intellectual functioning . . . would not affect the utility of the Grids, which account for illiteracy and emphasize unskilled work that can be performed despite [such] borderline intellectual functioning . . . .");[13] <u>Reyes v. Sullivan</u>, 1991 WL 319031, at (C.D. Cal. Dec. 3, 1991) ("Unlike most non-exertional limitations, illiteracy is accounted for in the Grids themselves.") (citations omitted).

Accordingly, a remand or reversal is not warranted due to the ALJ's alleged errors at Step Five.

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 12, 2011

                                           /s/
                                Honorable Jacqueline Chooljian
                                UNITED STATES MAGISTRATE JUDGE

---

[13]<u>See</u> <u>supra</u> note 5.